**RETAIL CLERKS UNION LOCAL 648, AFL–CIO, Plaintiff-Appellant,**

v.

**HUB PHARMACY, INC., Defendant-Appellee.**

No. 81–4417.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1982.

Decided June 7, 1983.

W. David Holsberry, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiff-appellant.

Michael L. Ohleyer, Robert T. Parker, Titchell, Maltzman, Mark, Bass & Ohleyer, San Francisco, Cal., for defendant-appellee.

Before WALLACE and FERGUSON, Circuit Judges, and GRANT,* District Judge.

FERGUSON, Circuit Judge:

Retail Clerks Union Local 648 ("the Union") appeals the dismissal of its action against Hub Pharmacy, Inc. ("Hub"). The Union sued Hub for damages and an accounting pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in order to enforce the collective bargaining agreement. The complaint was filed more than four years after the agreement expired, but intervening proceedings were held before the National Labor Relations Board ("NLRB") and this court.

The district court found that California's equitable tolling doctrine did not apply to extend the four-year statute of limitations and dismissed. We reverse.

## FACTS

In a prior action, the NLRB held in January 1975 that Hub had violated sections 8(a)(5) and (1) of the National Labor Relations Act when it repudiated a collective bargaining agreement reached on its behalf by the San Francisco Pharmaceutical Association in a multi-employer bargaining unit, and when it untimely withdrew from the unit. The NLRB ordered that Hub honor and abide by any agreement executed by the Union and the Association. *Hub Pharmacy, Inc.,* 216 N.L.R.B. 69 (1975). In August 1977, this court entered its judgment enforcing the NLRB order.

■ The agreement which Hub repudiated terminated on October 31, 1976. Four and one-half years later, on April 9, 1981, the Union filed this section 301 suit to enforce its terms. Claiming that the four-year statute of limitations had been exceeded, Hub filed a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. The Union argued that under California equitable tolling doctrine, the April 9, 1981 complaint should be timely because the statute of limitations would be tolled from May 4, 1974, when the Union filed its first unfair labor practice charge with the NLRB, until at least August 4, 1977, when this court entered its judgment. *See Isthmus Landowners Ass'n v. California,* 601 F.2d 1087, 1089 (9th Cir.1979) (when an action tolls the statute of limitations, the appeal further tolls the limitations period). The district court found that the four-year statute of limitations had run on the action because the prior proceedings gave insufficient notice to toll. It therefore granted the motion for summary judgment.[1]

---

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, sitting by designation.

1. A statute of limitations defense may be raised either by a motion to dismiss or one for summary judgment. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980). Although the district court dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6), the record reveals that matters outside the pleadings were considered by the court. We therefore treat the dismissal as a summary judgment under Fed.R.Civ.P. 56. *See Boone v. Mechanical Specialities Co.,* 609 F.2d 956, 958 (9th Cir.1979).

## ANALYSIS

### I. Standard of Review

 Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. The facts must be viewed and inferences must be drawn in the manner most favorable to the non-moving party. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau,* 690 F.2d 1240, 1250 (9th Cir.1982). The moving party has the burden of demonstrating that it is entitled to summary judgment. *Id.* Summary judgment is improper if tolling of the statute of limitations requires the resolution of disputed factual issues. *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

 Generally, this court gives great deference to the district court's interpretation of the law of the state in which it sits and will uphold that determination unless it is clearly wrong. *Washington v. Northland Marine Co.,* 681 F.2d 582, 584–85 (9th Cir. 1982) (Labor Management Relations Act); *see, e.g., Clark v. Musick,* 623 F.2d 89, 91 (9th Cir.1980).[2]

### II. Statute of Limitations and Tolling

 The applicable statute of limitations in a section 301 action is provided by the forum state's law. *Waggoner v. Dallaire,* 649 F.2d 1362, 1367 (9th Cir.1981). In California, the time period for this action is four years. *Id.;* Cal.Civ.Proc.Code § 337. Federal law controls the date on which the statute starts to run. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1309 (9th Cir.1982).

 When federal courts borrow a state statute of limitations, they also apply the state's tolling law if it is not inconsistent with federal law. *Board of Regents v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980) (42 U.S.C. § 1983); *Maurer v. Pitchess,* 691 F.2d 434, 436 (9th Cir.1982) (same). California equitably tolls the statute of limitations during the pendency of an earlier action if there is "timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Jackson v. Hayakawa,* 605 F.2d 1121, 1127 (9th Cir.1979), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (quoting *Addison v. State,* 21 Cal.3d 313, 319, 578 P.2d 941, 943–44, 146 Cal.Rptr. 224, 227 (1978)). The two actions need not be identical. *See Elkins v. Derby,* 12 Cal.3d 410, 413, 525 P.2d 81, 83, 115 Cal.Rptr. 641, 643 (1974) (personal injury action followed worker's compensation claim).

 Equitable tolling should not be applied in a manner that frustrates national labor-management policy. We believe that policy is fostered by having the NLRB attempt to resolve an issue before a party resorts to a section 301 action. Thus, if tolling is appropriate in this case, it would not be inconsistent with the constitution or with the applicable federal labor laws. We turn therefore to the requirements of California's equitable tolling doctrine.

### A. Lack of Prejudice.

 The district court did not address the question of prejudice. However, if a defendant has received timely notice of a possible action against him and has had ample opportunity to gather and preserve evidence in case he is eventually sued, "he can claim no substantial prejudice." *Addison,* 21 Cal.3d at 318, 578 P.2d at 943, 146 Cal.Rptr. at 226 (discussing *Elkins* ).

Hub claims that the earlier action did not give it sufficient notice of the nature of the section 301 action for damages and an accounting to reasonably enable it to prepare a defense. It also claims that the Union's withdrawal of a second NLRB charge, in which the Union attempted to obtain the employee records now sought in this action, induced it to believe that there was no need to collect and save them as necessary evidence.

**2.** *See also City of Burbank v. Nevada,* 658 F.2d 708, 710 & n. 1 (9th Cir.1981); *State ex rel.*

*Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir.1980).

Hub does not, however, assert that it failed in fact to gather and preserve the records, and the record indicates that there was no evidence which it failed to marshal. In 1978, well within the original limitations period, the Union requested the information which it seeks here; Hub's counsel responded in a letter that the employer had "made a thorough search of all files and records ... and cannot locate anything in addition to what has been provided." Thus on summary judgment, where inferences must be drawn favorably to the non-moving party, *Clipper Exxpress,* 690 F.2d at 1250, the lack-of-prejudice requirement has been met to the extent that it exists independent of the requirement of notice.

B. Notice.

Hub claims that the NLRB and appellate enforcement proceedings did not provide it with the notice required by the equitable tolling doctrine because: (1) the first proceeding was for declaratory relief as to the validity of the contract, while the second proceeding was for damages for its breach; therefore, the court-enforced order to honor and abide by the contract gave Hub notice only that the contract was enforceable and not notice of which contract provisions the Union might seek to enforce in a section 301 action; and (2) notice cannot be founded on correspondence between the parties but must come from the prior action itself.

■ We agree that, as a matter of law, simple correspondence between the parties and others does not provide the type of notice required to toll the statute of limitations. *See Peles v. La Bounty,* 90 Cal. App.3d 431, 437, 153 Cal.Rptr. 571, 575 (1979). Under California law, the first action itself must give sufficient notice. *Addison v. California,* 21 Cal.3d at 313, 578 P.2d 941, 146 Cal.Rptr. 224; *Elkins,* 12 Cal.3d at 417–18, 525 P.2d 81, 115 Cal.Rptr. 641.

The district court found that while the first action gave notice that the Union was seeking to enforce the contract, it did not give notice of those portions of the contract that the Union intended to enforce by other remedies. The court then stated that the tolling provisions did not apply because "while the claims were under the contract, they involved different claims[.]"

■ California, however, does not require that the causes of action be identical or even that damages be sought in both actions in order that requisite notice be given. *See Elkins,* 12 Cal.3d at 415, 525 P.2d at 84–85, 115 Cal.Rptr. at 644–45. While in California's first such case, *Bollinger v. National Fire Ins. Co.,* 25 Cal.2d 399, 410–11, 154 P.2d 399, 405 (1944), the California Supreme Court tolled the statute of limitations because the second action was a continuation of the earlier one and involved the same parties, facts, and cause of action, its more recent cases do not make such demands. In *County of Santa Clara v. Hayes Co.,* 43 Cal.2d 615, 275 P.2d 456 (1954), a newspaper published a proposed county charter containing errors; it was approved by the voters. Rather than sue the newspaper for damages, the county obtained legislative approval of the charter, but a court later invalidated the approval. The statute of limitations for the county's damage suit was tolled during the legislative and judicial proceedings. In *Tu-Vu Drive-In Corp. v. Davies,* 66 Cal.2d 435, 426 P.2d 505, 58 Cal.Rptr. 105 (1967), a third-party claim for property upon which execution was levied tolled the statute of limitations for a later damage action against the person who had secured the writ of execution.

Thus, the district court was clearly wrong in construing California law to the extent that it held that as a matter of law the first action gave insufficient notice of the second because the claims were not the same. Since the district court decision was clearly wrong on state law, and there is no factual dispute, this court can independently consider whether the notice requirement was satisfied. *See Power v. Union Pacific Railroad,* 655 F.2d 1380, 1383 (9th Cir.1981).

The state courts have not mandated a specific type of notice. In *Elkins,* the California Supreme Court strongly implied that

a defendant's interest in notice is to enable it to gather and preserve evidence. 12 Cal.3d at 417–18, 525 P.2d at 86–87, 115 Cal.Rptr. at 646–47. When the "notification purpose" of a statute of limitations is satisfied, the court liberally applies tolling. *Id.*

■ The following undisputed facts are relevant to whether the first proceeding gave sufficient notice of a breach of contract action for damages and an accounting:

1. The Union's initial unfair labor practice charge filed with the NLRB alleged that Hub:

> failed and refused and continues to fail and refuse to apply the terms and conditions of the collective bargaining settlement . . . .

2. In the NLRB proceeding, the ALJ did not recommend that Hub pay the bargained-for increases because the agreed-to retroactive contract had not yet been executed. The ALJ, however, stated that:

> some of the members were voluntarily paying the increases and some of them might not be paying them. Under these circumstances, I shall recommend that [Hub] be ordered to honor and abide by any collective-bargaining contract which is actually executed by the Association on behalf of the employers in the multi-employer bargaining unit.

*Hub Pharmacy, Inc.,* 216 N.L.R.B. at 74 (footnote omitted). He also ordered that if the contract contained a retroactivity clause when it was completed, that clause should be fully applicable to Hub. *Id.* at n. 12. The contract contained such a clause.

3. Both the NLRB and this court ordered Hub to honor and abide by the terms of the collective bargaining agreement.

As discussed in the previous section of this opinion, Hub has not shown prejudice resulting from the delay, and it had sufficient opportunity to gather and preserve evidence. We therefore find that, as a matter of law, the orders by the ALJ, the NLRB and this court to honor and abide by the contract, along with the ALJ's statement that some employers already were paying the increases, and imposing retroactive contract clauses upon Hub gave Hub sufficient notice that it had to abide by every provision of the contract and could face a breach of contract action for damages and an accounting if it failed to pay the negotiated increases. Tolling under these circumstances does not frustrate the statute of limitations notification purpose to "[prevent] surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Elkins,* 12 Cal.3d at 417, 525 P.2d at 86, 115 Cal.Rptr. at 646, *quoting Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

**C. Reasonable and Good Faith Conduct.**

■ In addition to notice and lack of prejudice, California's equitable tolling doctrine requires that the plaintiff act reasonably and in good faith. Some of the cases focus upon a plaintiff's reason and good faith in choosing to file the first action. *See Jones v. Tracy School Dist.,* 27 Cal.3d 99, 108, 611 P.2d 441, 445, 165 Cal.Rptr. 100, 104 (1980); *Addison,* 21 Cal.3d at 318, 578 P.2d at 943, 146 Cal.Rptr. at 226; *Elkins,* 12 Cal.3d at 414, 525 P.2d at 84, 115 Cal.Rptr. at 644. In those cases, unreasonable delay in filing the second action was not an issue. Other cases, however, also address the plaintiff's later conduct. *See Tannhauser v. Adams,* 31 Cal.2d 169, 177–78, 187 P.2d 716, 722 (1947) (statute of limitations for second action was not tolled because plaintiff did not diligently pursue first action, which was dismissed for lack of prosecution); *Bollinger,* 25 Cal.2d at 410, 154 P.2d at 405 (plaintiff diligently pursued first action and statute of limitations for second action was tolled) (Traynor, J.); *Mattson v. City of Costa Mesa,* 106 Cal.App.3d 441, 455 n. 3, 164 Cal.Rptr. 913, 921 n. 3 (1980) (tolling applies if second action is filed promptly) (dictum); *Nichols v. Canoga Industries,* 83 Cal.App.3d 956, 963–64, 148 Cal. Rptr. 459, 464 (1978) (unreasonable delay in filing second action might be a factor that could bar that action in light of the equitable foundation of the tolling rule) (dictum).

Here we interpret this doctrine to require that the Union must have acted reasonably and in good faith *both* when it first filed the NLRB proceeding *and* when it later waited until April 1981 to file this section 301 action. Hub has not argued that the Union acted improperly when it filed the initial NLRB proceedings in May 1974, before the collective bargaining agreement was executed, or when the Union refrained from filing suit in 1977, when this court enforced the NLRB's order. Hub, however, does argue that the Union did not act reasonably or in good faith in waiting until 1981 to file this section 301 action.

The district court found that the claims had lain "dormant since 1978," that the Union had "slept for quite a long time on [its] rights in this case," and that equity would not allow such slumber. The court also observed that the Union was "naive" if it had continued to believe that the NLRB was interested in pursuing the case throughout this period since there had been "no evidence of that, at least not in writing, since 1978. No action [was] taken."

Hub claimed before the district court and again on appeal that there was no correspondence between the parties or with the NLRB from 1978 to 1980. However, the Union submitted to the district court copies of letters that it had written to the NLRB on April 23, 1979 and on June 12, 1979, along with an April 24, 1979 response from the NLRB, as well as declarations from its counsel describing contact with the NLRB throughout the period at issue. Hub did not introduce any evidence to the contrary.

Thus, the undisputed facts demonstrate that after the Union requested wage and hour information from Hub in early 1978:

1. On April 17, 1978, an NLRB compliance officer wrote to the Union that the prior action did not specifically encompass Hub's refusal to furnish information, and that a new charge should be filed. On April 20, 1978, the Union filed a charge that Hub refused to furnish necessary informa-

tion. Six days later the Union wrote to the NLRB and reviewed the problem.

2. By June 5, 1978, the Union had withdrawn the unfair labor practice charge pursuant to a May 31, 1978 letter from the NLRB that the problem was one of compliance with the prior court order rather than constituting a new unfair labor practice, and that "[u]nder such circumstances, the case is being referred to the Region's Compliance Officer for further investigation."

3. On April 23, 1979, the Union again wrote to the NLRB and asked it to undertake necessary enforcement proceedings. A compliance officer responded that an investigation would be undertaken to determine whether the case should be reopened.

4. On June 12, 1979, the Union spoke to a different NLRB employee who had been assigned to the case, and followed up this conversation with a letter reviewing and documenting the situation.

5. The Union apparently communicated with the NLRB by phone after June 12, 1979. According to counsel's declaration: (1) on August 28, 1979, the NLRB informed the Union by phone that the case had been referred to an NLRB regional attorney for an opinion on how the matter should be resolved; (2) in late March or early April 1980, the NLRB informed the Union by phone that the Board intended to make an additional demand for the records and information; (3) at a May 28, 1980 meeting, the Union explained the situation to the NLRB and stated that it was the Board's obligation to enforce the judgment, and the NLRB responded that it intended to make an additional demand for records and information; and (4) the NLRB never took the position that it would not seek enforcement of this court's judgment.

6. On May 28, 1980, the NLRB wrote to Hub and requested the information, stating that the NLRB might "reopen the matter and seek further relief as is deemed warranted." [3]

Although we must view the facts and draw inferences in the light most favorable

---

3. Hub responded that it was "quite surprised" to receive the NLRB's letter since it believed that the case was closed. Hub also stated that all of the requested information had been forwarded, that it had no further information, that the Union was harassing it, and that the Un-

to Hub on this summary judgment motion, *Clipper Exxpress,* 690 F.2d at 1250, this undisputed record reveals that the district court erred when it found that after 1978 there was no written evidence of Board interest in pursuing the matter, that the claims had lain dormant, and that the Union had slept on its rights.

The uncontradicted record before us demonstrates that the Union repeatedly communicated with the NLRB by correspondence and other means between 1978 and 1980, and that the NLRB uniformly specified that it would seek compliance with our 1977 order. We recognize that enforcement proceedings often progress slowly; here more than three years elapsed from the filing of the initial charge until we enforced the NLRB's order. In accepting the delay and attempting to rely on the NLRB, the Union tried to avoid duplicative proceedings, which are "inefficient, awkward and laborious." *See Elkins,* 12 Cal.3d at 420, 525 P.2d at 88, 115 Cal.Rptr. at 648. We therefore hold that for purposes of summary judgment the Union's showing here establishes adequately that its reliance on the NLRB from 1977 to 1981 was reasonable and in good faith.

CONCLUSION

■ We hold that, for purposes of applying California's equitable tolling doctrine, Hub has not demonstrated that it suffered any prejudice, the NLRB proceedings gave Hub sufficient notice, and the Union acted reasonably and in good faith when it sought enforcement from the NLRB. We therefore find that the applicable statute of limitations was equitably tolled, and this action was timely filed. The district court is reversed and the case remanded.

ion's complaints should be barred by the statute of limitations or laches. There is no indication that this letter was sent to the Union. Even if it had been, however, this reminder about the statute of limitations did not require the Union to file the section 301 action if it reasonably and in good faith relied on the NLRB to obtain the requested relief.