SIERRA CLUB, a California nonprofit corporation; Nevada Outdoor Recreational Association, a Nevada nonprofit corporation,

v.

John LEHMAN, Secretary of the Navy; and Elizabeth Hanford Dole, as Secretary of Transportation.

No. CV–R–85–540–ECR.

United States District Court,
D. Nevada.

Oct. 9, 1986.

Richard Schouten, Laurens H. Silver, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., David A. Hornbeck, Reno, Nev., for plaintiffs.

William A. Maddox, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, Nev., Gary B. Randall, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., Chief Judge.

This is an action brought by two environmental groups to stop supersonic flights by the Navy over a large area in Nevada. The plaintiffs assert that the Secretary of the Navy exceeded his authority in designating a "Supersonic Operations Area." The defendants, the Secretary of the Navy and the Secretary of Transportation, moved to dismiss.

The motion to dismiss, as well as the opposition, and the reply to the opposition, included exhibits. All three documents included argument concerning certain facts. Thus, the parties have clearly treated the motion to dismiss as one for summary judgment pursuant to Fed.R.Civ.P. 56. This Court also will treat the motion as one for summary judgment. *See Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1250 (9th Cir.1982).

A hearing on the motion to dismiss was held on January 15, 1986, before the United States Magistrate. On March 27, 1986, the Magistrate made a report and recommendation to dismiss this action. The plaintiffs filed objections to the Magistrate's report and recommendation. The defendants filed a response; the plaintiffs filed a reply.

On June 24, 1985, John Lehman, Secretary of the Navy, approved and signed a "RECORD OF DECISION TO DESIGNATE A SUPERSONIC OPERATIONS AREA (SOA) AND IMPLEMENT OTHER ACTIONS AT NAVAL AIR STATION, FALLON, NEVADA." In doing so, Secretary Lehman "designate[d] a Supersonic Operations Area (SOA) over land which lies

beneath portions of several existing Military Operations Areas (MOA's) near Naval Air Station (NAS) Fallon, Nevada." Secretary Lehman's Record of Decision to Designate an SOA at 1 (This document is on file as Exhibit A to plaintiffs' complaint). The Secretary described the SOA as an "... area of airspace within which airwings and squadrons can train at subsonic and supersonic speeds to simulate realistic combat conditions." *Id.* at 2. As designated by Secretary Lehman, the SOA covers 5,500 square miles east of Fallon Naval Air Station and will "... have a lower boundary, or floor, at an elevation of 11,000 feet above mean sea level (MSL) and extend to an upper boundary, or ceiling, of 58,000 feet MSL." *Id.* at 2.

By designating the SOA, the Secretary of the Navy authorized the operation of squadrons of military aircraft at supersonic speeds in airspace above public and private land in Nevada, including six wilderness study areas as well as farms and ranches in Dixie Valley. The authorization is for an indefinite period of time.

The Secretary of the Navy did not close the area to civilian aircraft but stated in the Record of Decision that "[p]rivate and commercial aircraft are allowed to fly through the area but are encouraged to contact NAS Fallon to avoid potential conflict." *Id.* at 2.

The decision of the Secretary of the Navy was accompanied by Draft and Final Environmental Impact Statements (EISs). According to the Draft EIS, the low probability, worst-case conditions would include as many as 136 supersonic sorties in one day. Draft EIS, p. 5–7. Also, it is possible that up to twenty F–14s could fly in the SOA at one time. *Id.* at 5–7. Of the aircraft to be operated within the SOA, the F–14 has the greatest noise-producing characteristics during supersonic flight. *Id.* at 5–7. The worst case conditions with a higher probability of occurring include forty-four flights per day, six days per week, four weeks per month; these conditions could exist on a long-term basis. *Id.* at 5–7.

The adverse environmental effects of the designation of the SOA would mostly result from the noise caused by increased subsonic activity and the pressure and noise caused by the sonic booms that are characteristic of the planned supersonic activity. *Id.* at 5–75—5–77. Some damage to structures is likely to occur. *Id.* at 5–75—5–77. Noise levels would increase; in some areas within the SOA on a given day one would hear multiple sonic booms with noise levels of up to 113 decibels on the C-weighted scale. *Id.* at 5–75—5–77. One in twenty booms heard at the ground would be a "focus boom," which could generate a peak sound level approximately twelve decibels higher than a typical boom. *Id.* at 5–75—5–77. The noise would cause annoyance as well as startle effects, which could conceivably result in accidents. *Id.* at 5–75—5–77.

The Secretary of the Navy did not seek approval from the Department of Transportation for the designation of the SOA. In a memorandum dated March 4, 1985, an agent of the Federal Aviation Administration (FAA) stated that he believed that supersonic flight below 18,000 feet MSL is undesirable.

Airspace below 18,000 feet MSL is "Controlled Airspace." In Controlled Airspace, aircraft are permitted to and do fly under Visual Flight Rule (VFR), without assistance from Air Traffic Control. 14 CFR § 71.15. Further, some portions of the airspace within the SOA between 11,000 feet and 18,000 feet MSL are Uncontrolled Airspace, in which no aircraft flies with Air Traffic Control Assistance.

Airspace from 18,000 feet MSL to 60,000 feet MSL is called "Positive Controlled Airspace." 50 Fed.Reg. 5047 (1985). Operations within Positive Controlled Airspace are under Instrument Flight Rules (IFR) and are controlled by Air Traffic Control. 14 C.F.R. §§ 1.1, 71.15, 91.97.

Military Operations Areas consist of airspace below 18,000 feet MSL used for nonhazardous military activities. FAA Order 7500, Procedures for Handling Airspace Matters, Part 7, Special Use Airspace.

(This document was filed as Exhibit 1 for defendants' memorandum in support of their motion to dismiss. Hereinafter it will be referred to as "FAA Procedures.") Nonhazardous military activities conducted within MOAs consist of air combat maneuvers, air intercepts, acrobatics, and low altitude tactics. FAA Order 7501, FAA Procedures. Because supersonic flight simply involves flight at a speed greater than the speed of sound, any of the activities listed as nonhazardous activities may involve supersonic flight.

49 U.S.C. § 1348 gives the Secretary of Transportation authority to designate, allocate, and regulate all navigable airspace in the United States. The Federal Aviation Administration exercises the Secretary's powers with respect to aviation safety and navigable airspace allocation. *See* 49 U.S.C. § 1655(c)(1); 49 C.F.R. § 1.47(a). Further, with regard to the allocation of airspace for military use, 49 U.S.C. § 1522 provides:

> In the exercise of his authority under section 1348(a) of this title, the Secretary of Transportation, in consultation with the Department of Defense, shall establish such zones or areas in the airspace of the United States as he may find necessary in the interests of national defense, and by rule, regulation, or order restrict or prohibit the flight of civil aircraft, which he cannot identify, locate, and control with available facilities, within such zones or areas.

By setting aside several MOAs in Nevada, the Secretary of Transportation established such an area in the interest of national defense.

The designation by the Secretary of the Navy of the SOA did not designate special use airspace not already designated by the FAA. The choice of the Navy to call the area a "Supersonic Operations Area" did not modify or expand the FAA designation of the airspace. The designation by the Navy apparently was made for reasons of convenience. It served to notify the public precisely of the Navy's plans for operations within the MOA and it allowed the Navy a

framework within which to analyze the environmental effects of the supersonic flight in compliance with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321, *et seq.* The Secretary of the Navy did not exceed his authority.

It is important to note that while the Secretary of Transportation has regulated all supersonic flight below 10,000 feet MSL, and supersonic flight by civil aircraft above 10,000 feet MSL, the Secretary has not deemed it necessary to regulate military supersonic flight over 10,000 feet MSL. *See* 14 C.F.R. §§ 91.55, 91.70.

Finally, as to the portion of the SOA from 18,000 feet MSL to 58,000 feet MSL, which lies above the MOAs, it is clear that the Secretary of Navy did not exceed his authority. There is undisputed evidence that the FAA and the Navy agree that the Navy is allowed to use the Positive Controlled Airspace over the Nevada MOAs involved here in much the same way the Navy uses MOAs. A Letter of Agreement to that effect was attached to the defendants' reply to plaintiffs' memorandum in opposition to the motion to dismiss as Exhibit 1. Thus, because there is no restriction on supersonic flight by military aircraft above 10,000 feet MSL and because it is evident that the FAA allowed Naval use of the airspace over the MOAs, it is clear that the Secretary of the Navy did not exceed his authority in designating as a Supersonic Operations Area the airspace above 18,000 feet MSL.

Even when the facts are viewed and inferences drawn in a manner favorable to the plaintiffs, it appears in this case that there is no genuine issue of material fact. When this is so, the moving parties are entitled to a judgment as a matter of law. *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030 (9th Cir. 1983).

In promulgating rules, regulations, and orders regarding the use of navigable airspace, the Secretary of Transportation is to balance several values, including the safety of aircraft, the efficient utilization of airspace, and the protection of persons and

property on the ground. *See* 49 U.S.C. § 1348(a) and (c). The Secretary of Transportation, through the FAA, did so when the Nevada MOAs were established. This action by the Secretary of Transportation along with further agreements between the FAA and the Navy regarding airspace over the MOAs established in the Secretary of Navy the authority to conduct supersonic flights. The Secretary of the Navy did not exceed his authority when he designated the SOA.

If the balance between the Navy's need to conduct supersonic flights and environmental concerns dictates that supersonic flights should cease in the Fallon Naval Air Station Complex, it is a decision to be made by the Secretary of Transportation. This Court sees no legal reason why such flights must cease.

IT IS, THEREFORE, ORDERED that the Magistrate's report and recommendation is AFFIRMED and that the action is DISMISSED.

IT IS FURTHER ORDERED that judgment be entered by the Clerk in favor of defendants and against plaintiffs.