**Ethel A. MARQUARDT and Dolores Marquardt Gaynor, Plaintiffs,**

v.

**UNITED AIRLINES, INC. and John Does I–Y and II–Z, Defendants.**

**Civ. No. 90–00743 DAE.**

United States District Court, D. Hawaii.

Jan. 9, 1992.

Robert M. Longstreth, Honolulu, Hawaii, Carl W. Hittinger, Ralph J. Kelly, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for plaintiffs.

James H. Hershey, Christine E. Kuriyama, Greeley, Walker & Kowen, Honolulu, Hawaii, for defendants.

ORDER GRANTING IN PART AND DE-
NYING IN PART UNITED'S MO-
TION TO DISMISS OR FOR PAR-
TIAL SUMMARY JUDGMENT

DAVID A. EZRA, District Judge.

On January 6, 1991, this court heard defendant United Airlines, Inc.'s ("United") motion to dismiss or for partial summary judgment. James H. Hershey, Esq. appeared on behalf of United; Robert M. Longstreth, Esq. appeared on behalf of plaintiffs. After reviewing the motion and the supporting and opposing memoranda and hearing oral argument, the court grants in part and denies in part the motion.

## BACKGROUND

On October 24, 1988, plaintiffs Ethel A. Marquardt ("Marquardt") and her daughter Dolores Marquardt Gaynor ("Gaynor") flew to Maui aboard United Airlines flight 119. Marquardt suffers from several infirmities that rendered her physically incapable of negotiating the mobile stairway in order to deplane. As a result, United used a forklift and basket to transport Marquardt from the aircraft to the ground. This procedure had been used by Marquardt on prior occasions without incident.

United employee Alan Sato ("Sato") accompanied Marquardt in the basket as it descended, and instructed her to place her hands on the rails of the basket, away from the forklift. As the basket touched the ground, Sato turned momentarily to unfasten the safety chain across the basket's front. While Sato's head was turned, Marquardt apparently moved her hand to the back of the basket, where it was caught between the basket and the fork lift mast. Marquardt cried out while her daughter observed from some distance away, unable to assist her.

As a result of the accident, Marquardt experienced pain and some swelling to her hand. She was treated at a Maui hospital and released. She has since been diagnosed as suffering from post-traumatic stress syndrome, and she alleges this condition resulted from the accident. Gaynor alleges severe emotional and psychological injuries stemming from her witnessing the accident.

Plaintiffs filed suit on October 23, 1990. They assert claims for negligence, breach of contract, products liability, wrongful infliction of emotional distress, and punitive damages. On July 11, 1991, this court denied United's motion for partial summary judgment on the punitive damages claim. On September 12, 1991, United filed the present motion to dismiss or in the alternative for partial summary judgment. The motion alleges the following:

1) the complaint should be dismissed for lack of subject matter jurisdiction because the amount in controversy is below the diversity jurisdiction minimum amount of $50,000;

2) there is insufficient evidence to support the negligent infliction of emotional distress claim;

3) Hawaii law does not recognize a cause of action for loss of consortium by a child; and

4) there is no clear and convincing evidence to prove a punitive damage claim.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

■ Because the parties have submitted, and this court has considered, matters outside the pleadings, this motion is treated as one for summary judgment only. Fed. R.Civ.P. 12(c). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Retail Clerks Union Local 648 v. Hub Pharmacy*, 707 F.2d 1030, 1033 (9th Cir.1983). In ruling on a motion for summary judgment, this court views the facts and inferences in the light most favorable to the non-moving party. *Id.*

■ The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e).

■ There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). There is also no issue of fact if on the record as a whole, a rational trier of fact could not find in favor of the non-moving party. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

■ If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

■ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

## DISCUSSION

### I. JURISDICTIONAL AMOUNT

■ In order to invoke diversity jurisdiction, the amount in controversy must be at least $50,000. 28 U.S.C. § 1332(a). If it appears to a "legal certainty" that the amount in controversy is less than the jurisdictional amount, the court should dismiss the case for lack of subject matter jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). When the amount in controversy is challenged, the party invoking federal diversity jurisdiction has the burden of proving that the matter in controversy exceeds the jurisdictional minimum amount. *Nelson v. Keefer,* 451 F.2d 289, 296 (3rd Cir.1971).

■ In the present case, United submits that plaintiffs' actual damages total only $7,708.63. United, however, fails to take into account plaintiffs' claims for emotional distress and punitive damages. The court finds that plaintiffs have provided sufficient evidence at this stage in the proceedings to create a triable issue as to whether their alleged damages are in excess of $50,000.

### II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Count VII of the complaint alleges that the defendants wrongfully inflicted emotional distress on Gaynor. United asserts that the evidence does not support a claim for either intentional or negligent infliction of emotional distress. Plaintiffs concede that their complaint does not support a claim of intentional infliction of emotional distress. The issue is therefore whether plaintiffs have come forward with sufficient evidence to give rise to genuine issues of material fact with respect to Gaynor's claim of negligent infliction of emotional distress.

■ In this diversity action, the court applies Hawaii's substantive law. *See Stoddard v. Stoddard,* 641 F.2d 812

(9th Cir.1981). Under Hawaii law, a plaintiff may recover for "serious mental distress" if it can be shown that "a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues v. State,* 52 Haw. 156, 173, 472 P.2d 509 (1970). In the present case, Gaynor has presented significant evidence of her emotional distress resulting from United's allegedly negligent handling of her mother. Such evidence is supported by expert opinion. Furthermore, Gaynor's emotional distress claim is buttressed by her proximity to the incident and her relationship to the victim, her mother. *See Kelley v. Kokua Sales & Supply,* 56 Haw. 204, 208, 532 P.2d 673 (1975).

United argues that under Hawaii law Gaynor's emotional distress cannot be "severe" enough to support her claim. However, in light of the quantum of evidence submitted by Gaynor, a determination as to the severity of her emotional distress is properly left to the jury.

As indicated above, summary judgment is therefore denied as to Gaynor's claim for negligent infliction of emotional distress. There being no evidence of intentional infliction of emotional distress summary judgment is granted to United on that claim.

## III. LOSS OF CONSORTIUM

█ Count VIII of the complaint alleges that as a result of United's negligence, normal family relations between Gaynor and Marquardt have been impaired thereby causing Gaynor to suffer a loss of consortium. United asserts that Hawaii does not recognize a cause of action for a child's loss of consortium due to a non-fatal injury to a parent. Plaintiffs concede that there is no explicit statutory or judicial authorization for a claim of loss of parental consortium. Plaintiffs argue, however, that if the Supreme Court of Hawaii were presented with the issue of whether to recognize a parental consortium claim, that court would recognize such a cause of action based on its recent decision in *Masaki v.*

*General Motors Corp.,* 71 Haw. 1, 19–22, 780 P.2d 566 (1989).

In *Masaki,* the plaintiff was severely injured as a result of an automobile defect. Among other causes of action, the plaintiff's parents brought a claim for loss of consortium. The court noted that although the Hawaii wrongful death statute, Haw. Rev.Stat. § 663–3, recognized a filial consortium cause of action, neither the Hawaii legislature nor the Hawaii courts had recognized a claim for loss of filial consortium resulting from injury short of death. *Id.* at 19, 780 P.2d 566. Reasoning that severe injury can have just as much an impact on the quality of the parent-child relationship as death, the court expanded the cause of action for loss of filial consortium to include cases in which the child was injured but not killed. *Id.* at 20, 780 P.2d 566.

The defendants in *Masaki* argued that the parents should not be entitled to recover for loss of filial consortium because the "child" in question was twenty-eight years old at the time of the accident. Rejecting that argument, the Supreme Court of Hawaii stated:

> At common law, the child, like the wife, was relegated to the role of a servant and considered an economic asset to the family. In the modern family, however, children have become less of an economic asset and more of a financial burden to their parents. Today children are valued for their society and companionship. Thus, services have become only one element of the consortium action while the intangible elements of love, comfort, companionship, and society have emerged as the predominant focus of consortium actions.

71 Haw. at 21, 780 P.2d 566.

In a footnote, the court discussed a 1957 Hawaii Supreme Court case in which the court held that no cause of action existed in favor of a child for injuries sustained by his parents. *Id.* at 19 n. 8, 780 P.2d 566 (discussing *Halberg v. Young,* 41 Haw. 634 (1957)). In regard to *Halberg* and parental consortium claims, the court in *Masaki* explained:

Appellants claim that our decision in *Halberg* is dispositive of the instant case because a parent's claim for the lost consortium of a child is merely the reciprocal of a child's claim for the lost consortium of his parents. While we recognize that the two actions are analogous in many respects, the issue of parental consortium is not before us today.

71 Haw. at 19 n. 8, 780 P.2d 566.

Based on the reasoning of the Supreme Court of Hawaii in *Masaki*, this court finds no relevant distinction between loss of parental consortium and loss of filial consortium. In *Masaki*, the court based its decision not on outdated parent-child concepts, but on the intangible elements of love, comfort, and companionship. These elements of the parent-child relationship are equally applicable regardless of whether the parent or the child later becomes injured or dies. The Supreme Court of Hawaii's rationale behind the over thirty-year old decision in *Halberg v. Young* was implicitly rejected by that court in *Masaki*. For this court to now follow *Halberg* and ignore the clear teachings of *Masaki* would be to place form over substance.

It is this court's considered judgment that if presented with the facts present here the Supreme Court of Hawaii would expressly overrule *Halberg*. This court thus finds that a cause of action for loss of parental consortium now exists under Hawaii law and that Gaynor may maintain an action for the loss of the consortium of her mother.

## IV. PUNITIVE DAMAGES

■ Under Hawaii law, punitive damages are recoverable where the defendant has acted with such an entire want of care as would raise a presumption of conscious indifference to consequences. *Masaki*, 71 Haw. 1, 16–17, 780 P.2d 566; *cf. Quedding v. Arisumi Bros., Inc.*, 66 Haw. 335, 340, 661 P.2d 706 (1983) (punitive damages appropriate in breach of contract action where defendant has acted wantonly or oppressively or has engaged in some willful misconduct raising a presumption of conscious indifference to consequences) (quoting *Kang v. Harrington*, 59 Haw. 652, 660–61, 587 P.2d 285 (1978)); *see also National Consumer Co-op. Bank v. Madden*, 737 F.Supp. 1108, 1114 (D.Haw.1990) (punitive damages available in products liability case where *Masaki* standard met).

■ In determining whether punitive damages are appropriate, the court focuses primarily on the defendant's state of mind and, to a lesser degree, the nature of his conduct. *Masaki*, 71 Haw. at 7, 780 P.2d 566. Punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. *Id.* Further, a plaintiff must prove entitlement to punitive damages by clear and convincing evidence. *Id.* at 16, 780 P.2d 566.

In the July 11, 1991 order, this court denied United's first motion for partial summary judgment with respect to punitive damages. This court indicated:

While the facts presently before the court do not evidence any ill will or intent to harm on the part of any United employee, those facts could, if liberally construed in plaintiffs' favor, give rise to an inference that United acted with conscious disregard for Mrs. Marquardt's safety. On a motion for summary judgment, the court must accept as true plaintiffs' version of the facts, *Retail Clerks*, 707 F.2d at 1033, and the court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

■ At the time of the previous motion, discovery was still underway. Although discovery is now complete, the court finds that some of the factual matters previously in dispute have not been resolved. In particular, a substantial dispute remains as to whether United employee Sato intentionally misled plaintiffs by advising them that no wheelchair was available for Marquardt's use while knowing that wheelchairs were in fact available and nearby. Thus, genuine issues of material fact remain with respect to United's alleged "conscious indifference" in its treatment of Marquardt.

United argues that plaintiffs have not presented "clear and convincing evidence" to support a punitive damages claim. Plaintiffs, however, have come forward with sufficient evidence to create a genuine issue of material fact on the question of their entitlement to punitive damages. Upon a proper motion made at trial, the court may reexamine the question of whether as a matter of law plaintiffs have put forth sufficient evidence at that time to support a claim for punitive damages.

## CONCLUSION

For the reasons stated, the court GRANTS United's motion for partial summary judgment with respect to plaintiffs' claim for intentional infliction of emotional distress and DENIES the remainder of United's motion for partial summary judgment.

IT IS SO ORDERED.