*W. O. Smith*, for plaintiff.

*W. C. Achi*, for defendant.

---

### REBECCA P. PUUKU *vs.* PUUKU KALELEKU.

#### QUESTION RESERVED BY McCULLY, J.

HEARING, APRIL 25, 1890.   DECISION, MAY 31, 1890.

JUDD, C.J., McCULLY AND BICKERTON, JJ.   DOLE, J., ABSENT.

Question: Whether proof of non-consent of a party to marriage can in this Kingdom be held a ground for the annulment of marriage.

Held, that the power to anuul marriage is based solely on the statute, is limited by it, and that a decree of annulment must state a statute ground therefor; that hence a decree cannot be granted in the case submitted.

#### OPINION OF THE COURT, BY McCULLY, J.

This matter comes before this Court upon a question reserved by Mr. Justice McCully. He sent it up with a full report of the testimony and his findings thereon, as follows:

#### QUESTION RESERVED.

In the above recited testimony there is a disagreement only in one particular, the defendant testifying to a cohabitation at some time subsequent to the marriage, the plaintiff denying any cohabitation at any time. I think the latter testimony is consistent with the other proofs of non-cohabitation, and from my view of the witnesses it is the version which is to receive credit.

The case then stands, that the plaintiff never gave a consent to the marriage. It is true that she uttered an assent which was forced by the dominant authority of her chief, an assent

evidently expressed, or not denied, before the minister who performed the marriage ceremony, but immediately interpreted and revoked by her escape. Only the clearest proof all around could bring me to this conclusion. I would not consider the mere denial of a young girl unsupported by circumstances and extraneous proof. It is here proved that the defendant never asked her to marry him. The parties had no social acquaintance with each other. I take the circumstance of non-cohabitation without considering whether under our statutes what is termed a consummation of the marriage would be necessary, and the failure of consummation would not be a ground of annulment (physical inability not being alleged).

Our statutes prescribe a ceremonial or formal marriage, not necessarily a religious one. They prescribe that a license to marry shall be obtained from an appointed agent, and that the ceremony be performed only by a person having an authorization thereto. These may be termed external provisions for the regulation of the making of marriages, acts required by other persons. As between the parties it is termed the marriage contract. C. L., p. 423. It is not expressed in our statutes that there must be the consent of each party thereto, but in my opinion so much as that is involved in the term contract. The doctrine of law respecting contracts must be applied; there must be a mutual consent, the consent of each party.

But the grounds for an annulment of marriage are distinctly prescribed. It is a statute power given to Justices of the Supreme Court, and the power is limited to what is granted. Any decree of annulment, it appears to me, must be based on one of the specific statute grounds.

I take leave to reserve for the consideration of the Court in Banco the question whether a proof of non-consent can be in this Kingdom held a ground for the annulment of a marriage.

### BY THE COURT.

We believe the question here presented is new in this Court. It may be that the grave doubt whether the Court could go beyond the powers clearly given by statute has prevented an ap-

plication for annulment of marriage on the ground of non-consent. It may be, and this seems probable, that no such case has been known where a non-consent, and a persistent after refusal to give consent, could be so clearly proved as has been in the case before us. We take it to be an absolute fact of the case that this plaintiff never gave the consent of her mind to this marriage.

The statute under which nullity of marriage may be made by the Court is Section 1313 of the Code. It provides that it may be pronounced for either of six enumerated causes existing at the time of the marriage, among which is not the cause, non-consent, upon which this suit is brought. Has the Court power to annul a marriage on any other ground?

In support of the affirmative it is submitted by petitioner's counsel that the language of the statute is permissive in its nature, that there are no words of a restrictive character, such as are found in the statute of divorce, where the language used is, "Divorces from the bond of matrimony shall be granted for the causes hereinafter set forth, *and no other.*" But an enumeration of allowed causes should be construed as an exclusion of others. The statute concerning divorces, enacted in 1870, bears the marks of design to be particularly stringent and to check a too great facility in obtaining divorces. It cannot, however, be considered that the use in this of the negative phrase, "and no other," can operate to allow other statutes, not employing equivalent words, to be construed more liberally than they would have been otherwise. The general rule of construction, *expressio unius est exclusio alterius,* is still operative on them. But without the application of this maxim the result must be the same, when it is considered that the power to decree annulment of marriage is purely a statutory one, and extends only to what is affirmatively given by the statute.

There is nothing like a common law authority here, in accordance with which the enumerated causes are expressly allowed, with a remainder of authority upon which the Court may proceed when there are no negative restrictions.

The often-quoted Sections 14 and 823 are here cited as author-

ity for the Court to go outside of what is expressed in the statutes. The leading case upon these sections is *Kake vs. Horton*, 2 Hawn., 209. An action on the case was brought under the generally expressed authority of Section 1116 for the institution of suits for the recovery of damages for injuries, direct or consequential. This action would not lie by the common law of England, as the death of a human being could not in a civil action be complained of as an injury. There was nothing in our statute controlling the decision, and the Court held that the common law would not in this particular be adopted here, but adopted the rule of the civil law under which such action might be brought.

It is a matter of constant practice in our Courts to cite and adopt the reasonings and principles of law as found in the decisions of the Courts of other countries, and it is necessary to do so, because everything which controls the decision of a case may not be found in any of our statutes. For instance, the question whether a contract is supported by consideration; what elements must exist to sustain an action for malicious prosecution; and in innumerable questions arising in civil actions, must resort be had to what is known as legal authorities and legal reasoning. But we know of no instance in which the Court has ventured to enlarge its statute powers, as would here be done by decreeing an annulment upon a ground distinctly different from any enumerated in the law. It can make no difference that the case, in which it is desired that the Court shall assume a power, is a plain case and of great hardship. We cannot well conceive of a case more urgently requiring a remedy than the one before us, nor of one better supported by a legal principle, namely, that it is of the essence of a contract, and certainly of a marriage contract, that there should be the consent of mind of both parties to it, freely and voluntarily and truly expressed when the marriage ceremony is performed. It is the *sine qua non* of this ceremony; the only question being, Does each party take the other to be his or her wife or husband?

But it may be well that no statute provision allows inquiry into the voluntariness and truth of the apparent consent.

It is clear that a decree of annulment must set forth the ground thereof. No statute ground could be set forth. The Court would appear to have exceeded its jurisdiction and its decree to be void upon its face.

The case is remitted to the Justice before whom it is pending, with the advice that the decree prayed for cannot be granted on the ground of non-consent.

*J. M. Davidson,* for the petitioner.