EMMA MARION HALBERG AND HERBERT P. HAL-
BERG, INDIVIDUALLY AND JOINTLY, AND AS
NATURAL GUARDIANS OF MARILYN SUE
HALBERG, GERALD LESLIE HALBERG, AND
DAVID ELLIOTT HALBERG, MINORS *v.* SAI K.
YOUNG.

NO. 4006.

ARGUED FEBRUARY 14, 1957.          DECIDED APRIL 17, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an action for damages brought by a husband
and wife and their three minor children against defendant
for the recovery of damages arising out of injuries
sustained by the wife and mother, Emma Halberg, in an
automobile accident. Defendant moved to dismiss the
complaint as to the minor plaintiffs on the ground it failed
to state a cause of action. The presiding judge, having a
well founded doubt on the question of the liability to the
minor children for injuries to the mother, reserved to this
court the question of law:

"Should the motion to dismiss be granted on the ground that a complaint of minor children for damages arising out of the disability of their mother, caused by alleged negligence of the defendant, with attendant loss of acts of kindness, care, attention and other incidents of the parent and child relationship, fails to state a claim upon which relief can be granted?"

It may be stated as a general rule that a tort committed upon one person furnished no cause of action in favor of another although there are a number of exceptions to this rule. For example, where a child is injured by a tort committed upon it, while the parent has no right to sue for the injury itself, it is recognized that the parent may maintain an action in his own right for an impairment of his parental rights caused by the injury, including any pecuniary loss suffered by him because of the injury to his child. Thus, the same act may be a wrong to more than one person. (52 Am. Jur., *Torts,* § 95, p. 438.)

But at common law no action exists in favor of a child for injuries sustained by his parents. (2 Cooley, *Torts,* 4th ed., § 174.) The cases so holding are numerous and will be discussed to some extent hereinafter.

Since 1892 the Hawaiian statute (Act 57, Session Laws of 1892, which is now Revised Laws of Hawaii 1945, section 1) provides: *"Common law applies except when.* The common law of England, as ascertained by English and American decisions, is declared to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage * * *."

Prior to 1893 the common law or civil law not contrary to Hawaiian law or usage was followed as reason and equity dictated.

Section 14 of the Civil Code of 1859 provided: "* * *
in all civil matters, where there is no express law, they are
bound to proceed and decide according to equity, applying
necessary remedies to evils that are not specifically con-
templated by law, and conserving the cause of morals and
good conscience. To decide equitably, an appeal is to be
made to natural law and reason, or to received usage, and
resort may also be had to the laws and usages of other
countries."

Section 823 of the same Code provided: "The several
courts may cite and adopt the reasonings and principles
of the admiralty, maritime, and common law of other
countries, and also of the Roman or civil law, so far as the
same may be founded in justice, and not in conflict with
the laws and customs of this kingdom."

The plaintiffs contend that even though at English
common law no cause of action existed, yet a "Hawaiian
common law" cause of action exists in favor of a minor
child for non-fatal injuries to his parents, basing this on
Hawaiian judicial precedents and Hawaiian usage. *Kake*
v. *Horton,* 2 Haw. 209, as supplemented by *Ferreira* v.
*Honolulu R. T. & L. Co.,* 16 Haw. 615, is cited as the origin
of this usage.

The case of *Kake* v. *Horton,* 2 Haw. 209, decided in
1860, held that where a husband came to his death by the
wrongful act of defendant, the widow could maintain an
action to recover damages resulting from his death. The
court refused to follow the common-law rule that in a civil
court the death of a human being could not be complained
of as an injury, the wrong complained of being merged in
the felony. (16 Am. Jur., *Death,* § 48, p. 38.) The basis of
the decision is the court's right "* * * to decide equitably,
an appeal is to be made to natural law and reason, or to
received usage, and resort may also be had to the laws and
usages of other countries. We think reason and natural

justice are clearly in favor of permitting an action to be maintained, upon the grounds relied upon in this case, and upon a resort, for light, to the laws of those countries, to whose authority and opinions we yield the highest veneration, we find that the old harsh rule, which had its origin in feudal times, *has been superseded by liberal statutory provisions,* more in accordance with justice and with the sentiments and circumstances of an enlightened age. As we are not fettered by the English Common Law rule on the subject, *no legislative enactment* is required to remove that obstacle to the maintenance of an action like the present in a Hawaiian Court, and we think it ought to be permitted, as being consonant with natural law and reason, as well as with the laws of civilized countries." (Emphasis added.)

The court also cites a Massachusetts case which intimated that by the civil law and by the laws of France and Scotland, whose jurisprudence is mainly based upon the civil law, actions like the *Kake* case could be maintained and further stated that if the principles of civil law would permit the institution of such an action as the *Kake* case, it had no hesitation in preferring the doctrine of the civil law to that of the English law as they conceived the law "to be pre-eminently 'founded in justice.' "

It will also be noted that in addition to calling attention to the doctrine of civil law, the court referred to the liberal statutory provisions (the Lord Campbell's Acts) as more in accordance with justice and with the sentiments of an enlightened age.

The original Lord Campbell Act was enacted in England in 1846. Thereafter, statutes were enacted in the various States beginning with New York in 1847, Vermont in 1849, Ohio in 1851, Pennsylvania in 1851, Maryland in 1852, Illinois in 1853, Michigan in 1857, Mississippi in

1857, Wisconsin in 1857, South Carolina in 1859, and perhaps others prior to the *Kake* decision.

There can be no doubt that the court was greatly influenced by the statutes all repudiating the common-law doctrine that no action would lie for the death of a human being.

*Ferreira* v. *Honolulu R. T. & L. Co.,* 16 Haw. 615, following the rule laid down in *Kake* v. *Horton, supra,* held that an act may be maintained by a father for the death of his son caused by the negligence of another. There are also several additional cases deciding that widows may maintain actions for the deaths of their husbands, and a father for the death of a child. (*Puuku* v. *Kaleleku,* 8 Haw. 80; *Kekauoha* v. *Sch. Robert Lewers Co.,* 1 Estee 75; 114 Fed. 849.) In all these cases the common-law rule that no civil action will lie for the taking of a human life was repudiated.

At common law a father having a right to the services of his child could recover for injuries to the child that deprived him of such services, and it is a logical step to hold the death of the child caused by such negligence of another should not deprive the father of the right to recover for his loss.

As a matter of fact, the whole doctrine that the death of a human being could not be complained of in a civil court as an injury, the wrong being merged in the public offense, was illogical, unjust, and beginning in 1846 (the date of the first Lord Campbell's Act) was rejected, usually by statute, in practically all of the States. This *has not happened* (either *by statute or judicial decision*) in the denial of a right of a child to sue for damages for injuries to his parent which does not result in death.

There is no decision of a Hawaiian court, supreme or *nisi prius,* that holds a minor child has a cause of action

for injury to his parent and the overwhelming weight of authority is against such action.

However, the attention of this court has been called to a decision of the United States District Court for the Territory of Hawaii (*Scruggs* v. *Meredith,* 134 F. Supp. 868) and its approval by the Circuit Court of Appeals for the Ninth Circuit (*Meredith* v. *Scruggs,* decided October 31, 1956, being number 15,019) holding that a minor has a cause of action for loss of support, maintenance, education, nurture, care, training and acts of kindness against a third person for negligently causing personal injury, not resulting in death, to the minor's mother.

This is a very well reasoned and in many respects logical decision of the District Court of Hawaii, but we do not think it represents the law in Hawaii. It states that "Under Hawaiian law this is a case of first impression." The court then cites *Kake* v. *Horton* and *Ferreira* v. *Honolulu R. T. & L. Co.* as the basic "Hawaiian law" recognizing a common-law cause of action involving a family; it reviews various Hawaiian death case decisions, including the recent decision of this court in *Ginoza* v. *Takai Electric Co.,* 40 Haw. 691, concluding:

"The foregoing review indicates very clearly that Hawaii intends to protect all legal interests of the family. The decided cases to date to be sure *have all been wrongful death cases.* However, the cause of action is not founded upon the degree or quantity of the loss. Rather is it premised upon an invasion of a right. So it is that both logic and the law agree that redress may be had for a temporary impairment as well as for the total destruction of a right incident to the family relationship." (Emphasis added.)

The argument is made that it is merely a difference in degree whether the action is for the death of the parent, which deprives the child permanently of parental care and support, or whether it is an injury which would deprive the

child temporarily of such care and support, that the principle is the same.

However, such argument ignores the fact that where a parent has been injured by the negligent act of another the parent will recover from the other full damage which he has sustained, including such inability, if any, to properly care for his children, and thus the parent's ability to carry out his duty to support and maintain the child has not, in a legal sense, been destroyed or impaired by the injury to him. On the other hand, if the parent were killed, the parent's ability to support and educate the child ceases and the child has been deprived of this right and the child would be permitted to recover for such loss.

Further, such argument ignores the fact that while the parents at common law have the right to the services of the child and could recover for any interference of such right, it is just and reasonable that the death of the child should not defeat this right; the doctrine of the civil wrong being "merged in the felony" has been repudiated as it is so clearly illogical, unreasonable and unjust. On the other hand, under the common law the child has *no* right against third persons for interference with the father's duty to support and rear the child, so to give such a right to the child would not be simply an extension of an existing right to injuries involving death but would be the creation of an entirely new right not recognized by the common law or Hawaiian decisions or justified by a general legal principle of previous application to another question. (Cooley, *Torts, supra.*)

We feel that this is more than a difference in degree.

The Hawaiian cases cited in *Scruggs* v. *Meredith* all deal with death cases, either under the authority of *Kake* v. *Horton* or under the death statute of 1923, and except in the case of *Hall* v. *Kennedy* deal with the measure of damages and not with the creation of a cause of action.

The case of *Hall* v. *Kennedy* held that the parents, who were dependent upon an adult daughter for their support, had no right of action to recover for her death, that the court was bound by section 1 of the Revised Laws of Hawaii 1945 relative to the common law being the law of Hawaii except as changed by Hawaiian usage and precedent, etc.

Much stress has been laid on the case of *Gabriel* v. *Margah*, 37 Haw. 571. This was an action by parents for the death of their minor child by the negligent act of another. The case was tried jury waived and the lower court found for plaintiffs and awarded damages segregated and based upon the following elements: "(a) earning capacity during the remaining minority of the deceased, less cost of maintenance, (b) funeral expenses, and (c) loss of association, comfort and presence of the deceased." Two contentions were made: first, that the enactment of the wrongful death statute of 1923 abrogated any common-law remedy which might have theretofore existed and that recovery could be had only upon a showing of dependency as provided by the 1923 statute and, second, that the parents were not entitled to damages "for loss of association, comfort and presence." The court held that the death statute did not abrogate the cause of action for death by wrongful act as enunciated in the *Kake* v. *Horton* and *Ferreira* v. *Honolulu R. T. & L. Co.* cases, and further that the damages "admits of the consideration of not alone the elements of damage approved in the *Ferreira* case but other and additional elements legally incidental to the relationship of parent and child, the deprivation of which is the direct and proximate result of the death of the child." The *Gabriel* case was mainly concerned with the measure of damages for the *death* of a minor child.

In the *Scruggs* v. *Meredith* case reference is made to the statement of Judge Youngdahl in *Hill* v. *Sibley Me-*

*morial Hospital,* 108 F. Supp. 739, a case involving negligent injury to the wife and mother, to the effect that the common law should continue to be reappraised and reinterpreted to meet changing circumstances.

This court has recognized from the time of *Dole* v. *Gear,* 14 Haw. 554, to the more recent decisions of *Territory* v. *Alford,* 39 Haw. 460, and *Welsh* v. *Campbell,* 41 Haw. 106, that the common law is not static, that it consists of fundamental principles and reasons and a system of legal logic rather than a fixed and inflexible set of rules, and "by its own principles adapts itself to varying conditions, and the court at all times in the application of any rule should give heed to present-day standards of wisdom and justice" (*Territory* v. *Alford, supra*) ; yet we can see no compelling reason why this court should abandon the well-settled decisions of the common law that *no action exists in favor of a child for injuries sustained by the parent* not resulting in the parent's death. Certainly the decisions of the Hawaiian courts allowing a widow to sue for the death of her husband and the father to sue for the death of his minor son, thereby refusing to follow the decisions of the early English common law that no cause of action exists for the *death* of a human being, nor the Hawaiian statute allowing a cause of action to the family and dependents of a deceased person who came to his death by wrongful act, nor the several decisions from other jurisdictions cited dealing with an *intentional* tort in enticing a parent from the family, do not require a departure from the well-settled common-law rule.

Other authorities cited in *Scruggs* v. *Meredith* are cases where a parent is enticed from his family and the child sues for damages. Two cases involve the enticement of a father to desert his home and two involve the case of a mother: *Daily* v. *Parker,* 152 F. (2d) 174; *Russick* v. *Hicks,* 85 F. Supp. 281; *Miller* v. *Monsen,* 228 Minn. 400;

and *Johnson* v. *Luhman,* 330 Ill. App. 598. These cases bear little resemblance to the instant case; such torts are intentional and obviously there is no right of action in the parent who participates in the wrongful act. They are in no sense derivative cases as are the cases involving personal injuries to one other than the plaintiff. Further, these cases have received no wide support; in fact, the weight of authority is contra.

However, we deem it unnecessary to express any opinion on the soundness of these decisions dealing with intentional torts upon one member of the family whereby another member of the family is damaged in certain family rights, particularly the right of a wife to sue for loss of consortium.

.In this connection it is interesting to note two decisions from Minnesota: *Eschenbach* v. *Benjamin,* 195 Minn. 378, 263 N. W. 154, and *Miller* v. *Monsen,* 228 Minn. 400, 37 N. W. (2d) 543. In the first case it was held that a child was not entitled to recover for injuries to its parent. In commenting on this case, the statement was made in *Miller* v. *Monsen* as follows:

"It is contended also that a child is not entitled to recover for injuries to its parent, citing Eschenbach v. Benjamin, 195 Minn. 378, 263 N. W. 154. The argument is without merit, for the obvious reason that a child's cause of action for enticement of its parent is based upon a direct wrong to the child, for which recovery is sought against the enticer, see Pickle v. Page, 252 N. Y. 474, 169 N. E. 650, 72 A. L. R. 842; Green, Relational Interests, 29 Ill. L. Rev. 460, 479; whereas an action by a child to recover for injuries to its parent is based upon a direct injury to the parent and an indirect one to the child. As we held in the Eschenbach case, *the law does not recognize a cause of action in a child for indirect injuries sustained as a result of a direct injury to its parent.* The child's rights are to

be determined by whether its rights have been violated and not whether its parents' have been." (Emphasis added.)

Finally, we have the contention in the *Scruggs* case that section 12264, Revised Laws of Hawaii 1945, providing: "Parents, or, in case they be both dead, guardians, legally appointed, shall have control over the actions, the conduct and the education of their children during their minority; they shall have the right, at all times, to recover possession of their children by habeas corpus, and to chastise them moderately for their good; and it shall be the duty of all parents and guardians to set a good example before their children; to provide, to the best of their ability, for their support and education; to see that they are instructed in a knowledge of religion; to use their best endeavors to keep them from idleness and vice of all kinds; and to inculcate upon them habits of industry, economy and loyalty; *and it shall be lawful for any judge of any circuit court, on a complaint being laid before him against any parent,* that he or she is encouraging their children in ignorance and vice, *to summon such parent before him;* and, upon its being proved to his satisfaction, to bind out such children during their minority to some person of good moral character, to be well supported, trained to good habits, and taught at least the rudiments of knowledge" gives a child a right of action for injury to the mother that would result in depriving the child of such education, training, etc., by its parents. (Emphasis added.)

Undoubtedly every State in the Union has laws requiring parents to support and educate their children, yet the decisions do not hold that one who, by injury to the parent, interferes with such duties of the parent is personally liable to the child.

As shown by the wording of the statute and by Cooley, *Torts, supra,* "The obligation of the parent to support him

is only enforced by proceedings on behalf of the public, and not by suit in the name of or on behalf of the child. And no action will lie against a third person for depriving a child of his source of support by means of an injury to the parent."

To refer to only a few of the many cases holding that no action will lie against a third party by a child for an injury to the parent which does not result in death, see the following:

*Eschenbach* v. *Benjamin,* 195 Minn. 378, 263 N. W. 154, 155-156, states: "If this rule were to be extended as plaintiffs would have us do, then, carried to its logical conclusion, there would, in many accident cases, be litigation almost without end, all based upon a single tort and only one individual physically involved in the accident itself."

*Feneff* v. *New York Cent. & H. R. R. Co.,* 203 Mass. 278, 89 N. E. 436, 437, said: "The minor children of an injured father who is legally bound to furnish them with support may suffer indirectly from his injury. * * * The negligent defendant is supposed to have made full pecuniary compensation to the husband and father for his injury. In the benefit from this payment the wife and children may be expected to share to some extent. If they still suffer loss, it is not direct, but only consequential."

*Blair* v. *Seitner Dry Goods Co.,* 184 Mich. 304, 151 N. W. 724, 727, stated: "The minor children of an injured father and those of an injured mother may suffer on account of the injury, but it has never been considered that they had an action therefor."

In 54 Michigan Law Review 1023, the case of *Scruggs* v. *Meredith* is reviewed with a general discussion of an action by a child for indirect interference with the family relationship. Among other things, it states at page 1024: "Like the wife, the child had no legally protected interest in the family relationship at common law and it is only

recently that even a minority of states have recognized his right to recover for *direct* interferences in that relationship. The principal case is the first successful attempt to recover for an *indirect* interference. This review of the developments in the area might be viewed as indicating a strong 'trend' of judicial precedent and sentiment toward giving fuller protection to the family relationship. But a court considering the possibility of permitting a child to recover for indirect (and especially unintentional) interferences with his interest in that relationship might deny recovery by reference to any of the following arguments." The article then sets forth some five or six reasons why such a conclusion may not be desirable, and concludes on page 1025: "If a court is to create a legal right to recovery where none existed before it can and should consider this injury. But before it glibly catches hold of the maxim *ubi jus, ibi remedium,* it should also carefully consider the above-mentioned arguments which militate against allowing recovery."

We conclude that there is no Hawaiian judicial precedent giving a right of action to a child for personal injury to a parent not resulting in death, and that this court has no authority since 1892 to create such remedy contrary to the common law. Further, even if the court had authority to create such an additional remedy, there is a question as to whether it would be wise policy to so legislate. This is not like the *Kake* case, a death case, where there can be no dispute as to the justice and desirability of allowing such an action, where every jurisdiction has either by statute or judicial decision allowed such action, but such is not the case in a derivative action where *no State* permits such a recovery by a child for personal injuries to the parent not resulting in death. (54 Mich. L. Rev. 1023, 1024.)

While not technically so, to allow such action would in substance be splitting a cause of action. Further, as trial

lawyers well know, juries as a matter of fact do consider the plight of young children in fixing damages where their mother is so seriously injured as to be unable to give them proper care and attention.

It is, to say the least, a questionable policy whether any change should be made in the well-settled rule of the common law denying to a child the right of action for personal injuries to his parent; if a change is to be made in the rule, it should be made by the legislature.

The Court of Appeals for the Ninth Circuit being the appellate court for Hawaii in matters involving $5,000 or more and constitutional questions, it is suggested that this court should be governed by the decision in *Meredith* v. *Scruggs* heretofore referred to.

The Federal courts will follow the construction of state and territorial statutes (*Green* v. *Teets,* Misc. No. 634, C. C. A. 9, decided April 5, 1957, citing *Watson* v. *Buck,* 313 U. S. 387, in addition to other cases.) See also *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368, and *De Mello* v.*Fong,* 164 F. (2d) 232 (C. C. A. 9).

Further, unless there is a clear departure from ordinary legal principles, the Federal courts will take as correct the decisions of the territorial court upon matters of local law. (*Christian* v. *Waialua,* 305 U. S. 91; *Walker* v. *O'Brien,* 115 F. [2d] 956 [C. C. A. 9].) *Fernandez* v. *Andrade,* 59 F. (2d) 681, stated: "Local territorial tribunals will not be overruled on matters of purely local interest except in cases of manifest error."

As showing the extent to which this rule will apply, we have two decisions of the Supreme Court of the United States: *Lewers & Cooke* v. *Atcherly,* 222 U. S. 285, and *Kapiolani Estate* v. *Atcherly,* 238 U. S. 119. A decision of the Supreme Court of Hawaii upon a matter of local law was sustained by the Supreme Court of the United States. Thereafter, when the same question of law again came

before the territorial supreme court, the court stated "that a decision made by the supreme court of the United States following the opinion of the supreme court of Hawaii upon a matter of local law is binding upon this court in another case notwithstanding the belief of this court that its former opinion was wrong." Upon appeal of the latter case to the Supreme Court of the United States, the case was reversed, the court holding it would follow the latest decision of the Supreme Court of Hawaii on what is the local law.

The question reserved to this court is answered in the affirmative.

*J. Garner Anthony* (*Thomas M. Waddoups* and *Robertson, Castle & Anthony* on opening brief; *Frank D. Padgett* and *Robertson, Castle & Anthony* on reply brief) for appellant.

*William B. Cobb* (*Levinson & Cobb* on the brief) for appellees.

*Arthur K. Trask* (also on the brief as amicus curiae) for appellees.

*Gilbert E. Cox* (*Smith, Wild, Beebe & Cades* with him on the brief for Association of Casualty and Surety Companies), amicus curiae.