**Electronically Filed
Supreme Court
SCAP-22-0000699
04-JUN-2024
07:56 AM
Dkt. 26 OP**

SCAP-22-0000699

IN THE SUPREME COURT OF THE STATE OF HAWAI'I
_____

HELG Administrative Services, LLC, as Conservator for Curtis
Pomaikai Panoke, a.k.a. Curtis P. Panoke, a.k.a. Curtis Panoke,
an Incapacitated Person, and Katarine Hokulani Panoke Gec,
Plaintiffs-Appellees,

vs.

Department of Health, State of Hawai'i; Mark A. Fridovich, Ph.D;
William P. Sheehan, M.D.; Chiyome L. Fukino, M.D.;
Linda Rosen, M.D.; Virginia Pressler, M.D.;
Defendants-Appellees,

and

GEO Care, Inc., GEO Care, LLC, Correct Care, LLC, Correct Care
Solutions, LLC dba The Columbia Regional Care Center,
Defendants-Appellants.

_____

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-22-0000699; CIV. NOS. 1CC181000825; 1CC191000332)

JUNE 4, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, and DEVENS, JJ.

OPINION OF THE COURT BY McKENNA, J.

**I. Introduction**

This personal injury case presents an issue of first
impression: whether an adult child's claim of loss of parental

consortium is cognizable when the parent has not died but has entered a persistent vegetative state and will not recover.

The defendants (GEO Care, Inc.; GEO Care, LLC; Correct Care, LLC; and Correct Care Solutions, LLC, dba The Columbia Regional Care Center; collectively "GEO Care") point out that in Halberg v. Young, 41 Haw. 634, 642 (Haw. Terr. 1957), this court held "no action exists in favor of a child for injuries sustained by the parent not resulting in the parent's death."  Consistent with U.S. common law doctrine at that time, Halberg held that three minor children's claims for damages arising out of their mother's injury for "loss of acts of kindness, care, attention and other incidents of the parent and child relationship" failed to state a claim upon which relief could be granted.  41 Haw. at 634, 635, 642.

The plaintiffs (including Hoku Gec, the adult child of Curtis Panoke, the individual now in a persistent vegetative state, collectively "plaintiffs"), however, point out that in Masaki v. General Motors Co., 71 Haw. 1, 22, 780 P.2d 566, 578 (1989), we held that "a parent may recover damages for the loss of filial consortium of an injured adult child."  In Masaki, an adult was rendered a quadriplegic, and this court affirmed his parents' damage award for loss of filial consortium, noting that "severe injury may have just as deleterious an impact on filial consortium as death."  Masaki,

71 Haw. at 4, 19-20, 566 P.2d at 569, 577.  Masaki also contained the following footnote, which left open the issues we address today:

> In Halberg v. Young, 41 Haw. 634 (1957), we followed the traditional common-law rule and held that no cause of action exists in favor of a child for injuries sustained by his parents.  Appellants claim that our decision in Halberg is dispositive of the instant case because a parent's claim for the lost consortium of a child is merely the reciprocal of a child's claim for the lost consortium of his parents.  While we recognize that the two actions are analogous in many respects, the issue of parental consortium is not before us today.

Masaki, 71 Haw. at 19 n.8, 566 P.2d at 576 n.8.

The plaintiffs also note that the United States District Court for the District of Hawai'i ("federal district court") interpreted Masaki to have implicitly overruled Halberg.  The federal district court anticipated that this court would recognize an adult child's claim for loss of parental consortium in a case of parental injury.  Marquardt v. United Airlines, 781 F. Supp. 1487, 1492 (D. Haw. 1992) ("It is this court's considered judgment that if presented with the facts present here the Supreme Court of Hawaii would expressly overrule Halberg.  This court thus finds that a cause of action for loss of parental consortium now exists under Hawaii Law and that [the adult child] may maintain an action for the loss of consortium of her [injured] mother."); see also Mettias v. United States, Civ. No. 12-00527 ACK-KSC, 2015 WL 1931082, at *35 (D. Haw. Apr. 21, 2015) (following Marquardt).

3

Based on the reasons discussed below, we now recognize a child's loss of parental consortium claim when a parent is severely injured, whether the child is a minor or an adult.

## II. Background

On February 28, 2019, HELG Administrative Services, LLC (as conservator for Curtis Panoke) and Katja Gec (as limited conservator for Panoke's minor daughter, K.H.P.G.[1]) filed a post-Medical Inquiry and Conciliation Panel ("MICP") complaint[2] against GEO Care and the State of Hawai'i Department of Health; Mark A. Fridovich, Ph.D; William P. Sheehan, M.D.; Chiyome L. Fukino, M.D.; Linda Rosen, M.D.; and Virginia Pressler, M.D.[3] The complaint alleged as follows: The Columbia Regional Care Center is "a 374-bed private detention healthcare facility for individuals not competent to stand trial and found not guilty by reason of insanity." The State of Hawai'i Department of Health

---

[1]  During the pendency of the circuit court proceedings, Panoke's minor daughter K.H.P.G. (Katarina Hokulani Panoke Gec, or "Hoku") reached the age of majority and was substituted in as a plaintiff in lieu of Katja Gec.

[2]  The plaintiffs explained that they submitted an inquiry to the MICP on May 21, 2018 regarding the medical torts alleged in the complaint. They then filed what they call their "pre-MICP complaint" in case number 1CC181000825 on May 24, 2018. The MICP held a proceeding regarding the inquiry on November 29, 2018. On January 8, 2019, the MICP issued a written notice of termination of the inquiry. Therefore, the plaintiffs filed what they refer to as their "post-MICP complaint" on February 28, 2019 in case number 1CC191000332.
 The circuit court consolidated the pre-MICP proceedings (1CC18100825) and post-MICP proceedings (1CC191000332).

[3]  The parties later stipulated to dismiss Fridovich, Sheehan, Fukino, Rosen, and Pressler.

4

("DOH") contracted[4] with GEO Care to provide care to Panoke because Panoke "posed a significant danger to HSH [Hawai'i State Hospital] patients and HSH staff."

Panoke had been charged in 2005 with assault in the second degree after attacking an individual at an Aiea homeless shelter. Upon his arrest, Panoke was committed to the Kekela unit at Queen's Medical Center for seven weeks, but when his level of violence, aggression, and assaultive behavior became unmanageable, he was committed to HSH. At a stipulated facts trial, the circuit court judge acquitted Panoke of assault in the second degree on the ground of physical or mental disease, disorder, or defect excluding responsibility. Panoke was committed to DOH to be placed in an appropriate institution.

In 2007, while in DOH custody at HSH, Panoke attacked a nurse, fracturing her facial bones. The nurse required 26 stitches around her left eye. Panoke was then charged with assault in the second degree. This time, the circuit court found him fit for trial, Panoke pled no contest to the charge,

---

[4]    The DOH and GEO Care entered into a contract on May 1, 2010 to purchase health and human services for Panoke. Under sub-section 7.4 of the "General Conditions for Health & Human Services Contracts," the "rights and duties of the parties to this Contract[] shall be governed by the laws of the State of Hawai'i." For this reason, we apply Hawai'i law to this case.
       We also note that, even absent this provision, under this court's modern choice-of-law jurisprudence, we would "look[] to the state with the most significant relationship to the parties and subject matter" to decide whether Hawai'i law would apply. Mikelson v. United Servs. Auto. Ass'n, 107 Hawai'i 192, 198, 111 P.3d 601, 607 (2005). Due to the choice of law provision in the contract, we need not address this determination.

and the circuit court sentenced him to five years of incarceration.  In 2010, GEO Care accepted Panoke for mental health treatment.  DOH extended its contract with GEO Care multiple times through 2016.

In March 2016, Panoke expressed a desire to return to Hawaiʻi, but the DOH had not planned for him to return.  During the ensuing months, Panoke and his roommates were involved in violent altercations.  Panoke's request to be placed in a single room was ignored.  On June 8 or 9, 2016, Panoke was attacked by his roommates while he slept.  The attack left him in a persistent vegetative state.

Count One of the complaint alleged negligence or gross negligence as to GEO Care and DOH; Count Two alleged negligent infliction of emotional distress; Count Three alleged negligent or grossly negligent hiring, training, supervision, selection, and/or retention of defendants' employees; Count Four alleged breach of fiduciary duty.  For each count, plaintiffs alleged that, as a direct and proximate cause of defendants' wrongful conduct, they "suffered and will continue to suffer pain and suffering, mental anguish, emotional distress, loss of quality of life, loss of enjoyment of life, temporary and/or partial impairment and/or disability, emotional disfigurement and/or scarring, loss of income, economic loss, medical expenses, and

other expenses. . . ."[5]  The complaint prayed for general, special, and/or punitive damages.

GEO Care filed its answer on July 17, 2019 and its first amended answer on August 1, 2019.  Among the affirmative defenses set forth in its answer and first amended answer, GEO Care included "lack of standing" and that the complaint "fails to state a claim against Defendants upon which relief can be granted."

On April 13, 2022, GEO Care filed a motion for summary judgment ("MSJ") as to all of Hoku's claims for relief.  GEO Care first noted that it did not concede that Panoke was, in fact, Hoku's father, and therefore, alleged Hoku had no standing to bring claims relating to Panoke's injury.  Moreover, GEO Care argued, "Hawai'i does not recognize a cause of action by a child for damages arising from a non-fatal personal injury to a parent," citing Halberg, 41 Haw. 634.  GEO Care quotes Halberg as stating that "no action exists in favor of a child for injuries sustained by the parent not resulting in the parent's death."  Halberg, 41 Haw. at 642.

---

[5]     As such, the loss of parental consortium claims are derivative claims stemming from the negligence causes of action asserted by Panoke's conservator against GEO Care and the DOH.  The loss of consortium claims are not independent causes of action in and of themselves. See, e.g., Mist v. Westin Hotels, Inc., 69 Haw. 192, 199, 738 P.2d 85, 91 (1987) ("In view of the basis upon which the loss of consortium claim arises and the significant number of jurisdictions that continue to treat it as derivative, we . . . refuse to recognize the loss of consortium claim as a separate and independent cause of action and continue to treat it as derivative.").

Plaintiffs filed their memorandum in opposition to GEO Care's MSJ on June 29, 2022. Preliminarily, they submitted two exhibits demonstrating that Hoku was Panoke's biological child. They went on to argue that Halberg does not take into account the current case's circumstances, in which a child plaintiff has lost all manner of consortium with her father, who has been in a persistent vegetative state for six years and will not recover. Plaintiffs cited Masaki's observation that "no meaningful distinction can be drawn between death and severe injury where the effect on [filial] consortium is concerned." 71 Haw. at 20, 780 P.2d at 577. To further support their position, plaintiffs pointed to Marquardt, 781 F. Supp. at 1492, in which the federal district court interpreted Masaki as having implicitly overruled Halberg and predicting that this court would recognize a child's claim for loss of parental consortium where the parent has been injured but not killed.

In GEO Care's reply, it counter-argued that Masaki ruled narrowly on the parents' claim for loss of filial consortium and did not "directly state, or even suggest" that its ruling applied to a child's claim for loss of parental consortium. GEO Care pointed to footnote 8 in Masaki, stating that "the issue of parental consortium is not before us today." 71 Haw. at 19 n.8, 780 P.2d at 576 n.8.

8

On July 7, 2022, the circuit court held a hearing on GEO Care's MSJ.  The court indicated it was "going to go out on a limb" in denying GEO Care's MSJ by declining the follow the Halberg case.  The court's reasoning was as follows:

> [T]he Court finds persuasive the Hawaii Supreme Court's ruling in Masaki v. General Motors.
> Now, prior to Masaki, similar to this situation, neither the legislature nor the Hawaii courts recognized a cause of action for loss of filial consortium resulting from injury short of death caused by the wrongful conduct of another.  Masaki recognized, however, that severe injury may have just as deleterious an impact on filial consortium as death.
> The Supreme Court further held that the cause of action was in part based upon intangible elements of love, comfort, companionship, and society between child and parent rather than the outdated concepts of a child being a servant and economic asset to the parent.  And that's important because there was a lot of language in Halberg regarding this type of child being a servant, economic asset, etc.  And the Hawaii Supreme Court viewed loss of consortium more in these what they call intangible elements of love, comfort, companionship, and society.
> Conversely, the reasoning of Masaki, this Court would hold, would apply to the loss of parental consortium presented in this case.  There's a genuine issue of material fact as to Ms. Panoke Gec's loss of love, comfort, companionship, and society as a result of Curtis Panoke's injury and incapacity.
> While not controlling authority, this recognition of a cause of action for parental consortium based upon Masaki was the holding of the court in Marquardt v. United Airlines.  Again, the Court is considering that federal court decision as, while not controlling, persuasive authority.
> Finally, the Court finds that the Halberg case is distinguishable factually from the instant case.  While Halberg was not explicit about the type of injury suffered by the mother in the auto accident, the instant case is a case involving catastrophic injury where Mr. Panoke is in a vegetative state.  Halberg was partly predicated on the premise that where a parent has been injured by the negligent act of another, the parent will recover from the other full damage which he has sustained, including inability, if any, to properly care for his children.
> Here Mr. Panoke's condition and the legalities of the conservatorship does not enable him to fully recover damages for loss of consortium with regard to the daughter. So his cause of action here does not cover what Ms. Panoke -- Panoke Gec is claiming.

9

> So therefore, the Court will deny the motion for summary judgment.

The circuit court denied GEO Care's MSJ in an order dated September 9, 2022. The circuit court granted GEO Care's application for an interlocutory appeal, GEO Care appealed to the ICA, and this appeal was transferred from the ICA to this court.

### III. Standard of Review: Summary Judgment

On appeal, the grant or denial of summary judgment is reviewed de novo. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Villaver v. Sylva, 145 Hawai'i 29, 34, 445 P.3d 701, 706 (2019).

### IV. Discussion

**A. The parties' arguments on appeal**

**1. GEO Care's opening brief**

GEO Care's sole point of error on appeal is that the circuit court erred in denying its MSJ. In its opening brief on appeal, GEO Care argues that the circuit court disregarded established controlling precedent (Halberg), having not been overturned since 1957, and unjustifiably departed from the doctrine of stare decisis. GEO Care argues that any change to Hawai'i's laws on consortium ought to be made by the legislature, and the legislature has made no changes to Hawai'i Revised

Statutes ("HRS") § 663-1 (2016) since Halberg.[6]  GEO Care also asserts the federal district court misinterpreted Masaki in Marquardt to predict that this court would recognize loss of parental consortium claims where a parent is injured but still alive, because Masaki's holding should have been limited to filial consortium claims.

Lastly, GEO Care states that a "significant number of states refuse to provide children with a cause of action for the loss of parental consortium or parental care resulting from non-

_____

[6]     GEO Care cites to HRS § 663-1, titled "Torts, who may sue and for what."  That statute provides the following:

> Except as otherwise provided, all persons residing or being in the State shall be personally responsible in damages, for trespass or injury, whether direct or consequential, to the person or property of others, or to their spouses or reciprocal beneficiaries, children under majority, or wards, by such offending party, or the offending party's child under majority, or by the offending party's command, or by the offending party's animals, domestic or wild; and the party aggrieved may prosecute therefore in the proper courts.

HRS § 663-1 is not the basis of Hoku's loss of parental consortium claim against GEO Care; Hoku brings a common law claim, although HRS § 663-1 does specifically provide for "consequential" damages.  See HRS § 1-1 (2009)("Common law of the State; exceptions.  The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage[.]")
In this case, an adult child's loss of parental consortium claim arises out of "Hawaiian judicial precedent," similar to our court's common law recognition of a filial consortium cause of action in Masaki, extrapolating from HRS § 663-3 (2016), titled "Death by wrongful act." See Masaki, 71 Haw. at 19, 780 P.2d at 576 ("Loss of filial consortium is a recognized cause of action in Hawaii under our wrongful death statute. . . .").  Likewise, loss of parental consortium or care is a recognized cause of action under HRS § 663-3(b)(5)("Loss of parental care, training, guidance, or education").
Thus, contrary to GEO Care's contention, the expansion of law in this area can happen through this court's development of common law, not primarily through legislative action.

11

fatal injury caused by the alleged wrongful conduct of another,"
citing 18 cases from other jurisdictions. GEO Care relies
heavily upon one such case, Kershner v. Beloit Corp., 611 F.
Supp. 943, 947 (D. Me. 1985), for the following policy reasons
courts in other jurisdictions have refused to recognize a
child's claim of loss of parental consortium where the parent is
injured but alive:

> (1) the lack of precedent for such a cause of action; (2)
> the uncertainty and remoteness of the damages which would
> flow from such a cause of action; (3) the danger of
> duplication of recovery between the child and parents; (4)
> the unsettling effect that the creation of such a cause of
> action would have upon a parent's settlement negotiations
> with tortfeasors; (5) the increased risk of falsification
> in order to recover under such a cause of action; (6) the
> potential for increased insurance costs; (7) the potential
> harm to the integrity and sanctity of the family unit; (8)
> the lack of statutory authority for the creation of such a
> cause of action; and (9) the legal basis of a child's claim
> to the services of the parent under the substantive law of
> the state in question.

GEO Care asks this court to vacate or reverse the circuit
court's order denying its motion for summary judgment.

### 2. Hoku's answering brief

In her answering brief, Hoku argues that GEO Care's
reliance on Halberg is misplaced because (1) cases since Halberg
have left open the possibility of recognizing a loss of parental
consortium claim when a parent is injured but not killed, citing
Masaki, 71 Haw. 1, 780 P.2d 566, and Marquardt, 781 F. Supp.
1487; and (2) this court interprets HRS § 663-3 liberally to
grant broad remedial relief, citing Lealaimatafao v. Woodward-
Clyde Consultants, 75 Haw. 544, 867 P.2d 220 (1994), and Castro

12

v. Melchor, 142 Hawai'i 1, 414 P.3d 53 (2018) (plurality). Further, Hoku argues that GEO Care's use of out-of-state cases is "irrelevant" to determining the nature and scope of a loss of consortium claim arising under Hawai'i law. Nevertheless, she cites Ueland v. Reynolds Metals Co., 103 Wash. 2d 131, 140, 691 P.2d 190, 195 (Wash. 1984), for the proposition that "a child has an independent cause of action for loss of the love, care, companionship and guidance of a parent tortiously injured by a third party." In Ueland, while acknowledging that some other jurisdictions do not recognize such a claim, the Washington Supreme Court stated, "We find more persuasive the reasoning found in these decisions recognizing the cause of action. . . . When justice requires, this court does not hesitate to expand the common law and recognize a cause of action." Ueland, 103 Wash. at 135-36, 691 P.2d at 193.

### 3. GEO Care's reply brief

In its reply brief, GEO Care notes that Hoku does not address its argument that the legislature should be the one to create a loss of parental consortium claim where a parent is injured but still alive. GEO Care also states that Ueland, a Washington state case Hoku relies on, is unpersuasive because it relies on Washington law regarding consortium.

13

**B.  Our precedent**

**1.  <u>Halberg</u>**

<u>Halberg</u> held that "no action exists in favor of a child for injuries sustained by the parent not resulting in the parent's death."  41 Haw. at 642.  In <u>Halberg</u>, a mother was injured in a car accident and suit was brought by her husband and minor children, for the loss of the mother's "kindness, care, attention and other incidents of the parent and child relationship. . . ."  41 Haw. at 634-35.  Although the extent of her injuries was unclear, she survived the accident and, unlike Panoke, would apparently recover.  41 Haw. at 635, 639-40.  The Supreme Court of the Territory of Hawai'i held that her children could not maintain an action against those who negligently injured her because "[t]here is no decision of a Hawaiian court, supreme or <u>nisi</u> <u>prius</u>, that holds a minor child has a cause of action for injury to his parent and the overwhelming weight of authority is against such action."  41 Haw. at 638-39.

The <u>Halberg</u> court acknowledged that the United States Court of Appeals for the Ninth Circuit had, in fact, recognized such a claim in <u>Scruggs v. Meredith</u>, 134 F. Supp. 868, 869-70 (D. Haw. 1955) (holding that a child whose mother was negligently injured, but not killed, had a claim against the wrongdoer for loss of consortium because reciprocal rights and duties attached

14

to the relations of parent and minor child) (citing <u>Gabriel v. Margah</u>, 37 Haw. 571, 577 (Haw. Terr. 1947)).

In insisting that a child's loss of parental consortium claim would only lie where the parent was killed (not just injured), however, the <u>Halberg</u> court stated the following:

> [W]here a parent has been injured by the negligent act of another the parent will recover from the other full damage which he has sustained, including such inability, if any, to properly care for his children, and thus the parent's ability to carry out his duty to support and maintain the child has not, in a legal sense, been destroyed or impaired by the injury to him. On the other hand, if the parent were killed, the parent's ability to support and educate the child ceases and the child has been deprived of this right and the child would be permitted to recover for such loss.

41 Haw. at 640. In addition to the injured parent's ability to recover "full damage[s]" from the tortfeasor, the fact of eventual <u>physical</u> recovery was also critical to <u>Halberg</u>'s holding. The <u>Halberg</u> court rejected the argument "that it is merely a difference in degree whether the action is for the death of the parent, which deprives the child <u>permanently</u> of parental care and support, or whether it is an injury which would deprive the child <u>temporarily</u> of such care and support. . . ." 41 Haw. at 639-40 (emphases added). In other words, the <u>Halberg</u> court assumed injury short of death would not permanently deprive a child of parental care and support, which is not true in all circumstances. The <u>Halberg</u> court concluded that if the claim were to be recognized, it should be done by the legislature. 41 Haw. at 646.

15

### 2.  **Masaki**

Thirty years later, this court held that "a parent may recover damages for the loss of filial consortium of an injured adult child."  Masaki, 71 Haw. at 22, 780 P.2d at 578.[7]  In Masaki, 28-year-old Steven Masaki was rendered a quadriplegic after the van he was jump-starting shifted into gear and ran him over.  71 Haw. at 4, 780 P.2d at 569.  His parents sued in negligence and included claims for loss of filial consortium.  Id.  A jury returned a verdict in their favor.  Id.  On appeal, the defendants challenged, among other things, the loss of filial consortium award where Steven had been injured but not killed.  71 Haw. at 19, 780 P.2d at 576.

The court in Masaki acknowledged that neither the legislature nor this court had previously recognized such a claim; however, the court held there was little distinction between death and severe injury, so the purposes of HRS § 663-3 would be served by recognizing the cause of action.  71 Haw. at 19-20, 780 P.2d at 576-77.  The Masaki court stated that "severe injury may have just as deleterious an impact on filial consortium as death."  71 Haw. at 19-20, 780 P.2d at 577.

---

[7]    We note that the question on certiorari was framed as "whether there is a cause of action available to parents for the loss of consortium of an adult child who had been severely and permanently injured due to the defendant's negligence."  Masaki, 71 Haw. at 19, 780 P.2d at 576 (emphases added).  We think it is clear from the discussion on loss of filial consortium in Masaki that the holding covers "severe" injury.  See Masaki, 71 Haw. at 19-21, 780 P.2d at 576-78 (using the adjective "severe" to modify "injury" seven times).

Quoting a sister jurisdiction recognizing the claim, this court stated, "Often death is separated from severe injury by mere fortuity." 71 Haw. at 20, 780 P.2d at 577 (quoting Frank v. Sup. Court, 150 Ariz. 228, 230, 722 P.2d 955, 957-78 (1986)). The Frank court went on to explain

> Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured . . . is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with his child and experiences again the child's diminished capacity to give comfort, society, and companionship.

Masaki, 71 Haw. at 20, 780 P.2d at 577 (quoting Frank, 150 Ariz. at 231, 722 P.2d at 958).

This court went even further in Masaki to hold that loss of filial consortium should not be limited to parents of severely injured minor children. 71 Haw. at 21, 780 P.2d at 577. The limitation was historically

> premised on the rationale that upon emancipation, parents are no longer entitled to the services and earnings of their children. We find such reasoning outmoded and illogical. At common law, the child, like the wife, was relegated to the role of a servant and considered an economic asset to the family. In the modern family, however, children have become less of an economic asset and more of a financial burden to their parents. Today children are valued for their society and companionship. Thus, services have become only one element of the consortium action while the intangible elements of love, comfort, companionship, and society have emerged as the predominant focus of consortium actions.

Id. (citations omitted). Thus, the claim for loss of filial consortium is cognizable even where the severely injured person is an adult child. Id. The Masaki court recognized the

17

changing nature of consortium between parents and children as one "arising from the very bonds of the family relationship." Id. (citation omitted).

GEO Care clings to footnote 8 in Masaki to argue that the law on parental consortium has not changed. Masaki, 71 Haw. at 19 n.8, 780 P.2d at 576 n.8 ("[T]he issue of parental consortium is not before us today."). This language, however, neither expressly overrules nor affirms Halberg. Id. Rather, it leaves the door open for future courts, such as this one, to revisit parental consortium claims in non-fatal injury cases. That day has come.

We now expressly overrule Halberg to the extent it held that a child cannot claim loss of parental consortium where a parent is severely injured but not killed. This court does not lightly overrule precedent. The doctrine of stare decisis is a "principle of self-restraint on courts with respect to the overruling of prior decisions." Robinson v. Ariyoshi, 65 Haw. 641, 653 n.10, 658 P.2d 287, 297 n.10 (1982) (citation omitted). We apply this doctrine with a view toward

> the desirability that the law furnish a clear guide for the
> conduct of individuals, to enable them to plan their
> affairs with assurance against untoward surprise; the
> importance of furthering fair and expeditious adjudication
> by elminating the need to relitigate every relevant
> proposition in every case; and the necessity of maintaining
> public faith in the judiciary as a source of impersonal and
> reasoned judgments.

Id. A court should "not depart from the doctrine of stare decisis without some compelling justification." Ahn v. Liberty Mut. Fire Ins. Co., 126 Hawai'i 1, 10, 265 P.3d 470, 479 (2011). Stated differently, a court "should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." Id. (citation omitted).

## C.  The modern trend

In this case, the law on parental consortium nationwide has undergone dramatic change since Halberg was decided almost sixty years ago. Significantly more states now recognize the claim that Halberg stated did not exist. The Restatement (Third) of Torts:  Concluding Provisions (AM L. INST., Tentative Draft No. 1, 2022[8]) contains a new claim, albeit limited to minor children, in section 48C titled "Loss of Parental Consortium":

> A minor child of a parent who suffers physical or emotional harm, factually caused by the tortious conduct of an actor and within the actor's scope of liability, may recover for the loss of society resulting from the parent's injury. Loss of society includes loss of affection, comfort, companionship, love, and support, and the loss of services.

The precursor to this section, the Restatement (Second) of Torts § 707A, completely denied recovery for loss of parental consortium when it was approved in 1977. Restatement (Third) of Torts:  Concluding Provisions § 48C cmt. a. The Restatement

---

[8]  According to the American Law Institute's website, this draft "represent[s] the Institute's position until the official text is published." Torts: Miscellaneous Provisions | American Law Institute (ali.org). [https://perma.cc/SQG2-8B8J]

(Third) of Torts commentators explained, however, that since 1977, "there has been a clear and substantial trend toward recognizing parental consortium." Id.  According to the commentators, "Today, at least 19 states have case law and two have statutes permitting parental consortium claims.  With three states that have not decided the issue, a bare majority of states does not recognize parental consortium claims." Restatement (Third) of Torts:  Concluding Provisions § 48C cmt. b.  The commentators noted that Hawai'i was not counted among those states permitting parental consortium claims, although it acknowledged the federal district court's Marquardt decision. Restatement (Third) of Torts:  Concluding Provisions § 48C cmt. b, Reporters' Note.

We now expressly add our state to those permitting parental consortium claims and hold that loss of parental consortium is cognizable for a child, whether a minor or an adult, when a parent is severely injured.

Masaki characterized as "outmoded and illogical" the idea that children's (particularly minor children's) value lay solely in their role as servants to their parents:

> We realize that a number of courts which recognize the parents' cause of action for loss of consortium of their injured children restrict the action to minor children. This rule is generally premised on the rationale that upon emancipation, parents are no longer entitled to the services and earnings of their children.  We find such reasoning outmoded and illogical.  At common law, the child, like the wife, was relegated to the role of a servant and considered an economic asset to the family.  In

20

> the modern family, however, children have become less of an economic asset and more of a financial burden to their parents.  Today children are valued for their society and companionship.  Thus, services have become only one element of the consortium action while the intangible elements of love, comfort, companionship, and society have emerged as the predominant focus of consortium actions.

71 Haw. at 21, 780 P.2d at 577.  Stare decisis does not require courts to cling stubbornly to the past.  See Ahn, 126 Hawai'i at 10, 265 P.3d at 469 ("There is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis.") (cleaned up).  Masaki's footnote 8, reserving for another day the "reciprocal" issue of loss of parental consortium, must be read in concert with this passage, signaling that Halberg's days were numbered.

The passage above from Masaki also signaled this court's view that children in general, whether minor or adult, are valued by their parents -- for their love, comfort, companionship, and society -- and the reciprocal could be true as well.  Thus, we now hold that a child, whether a minor or an adult, may bring a loss of parental consortium claim for severe injury to a parent.  The Restatement (Third) of Torts: Concluding Provisions § 48C recognizes a "split on whether an adult child [versus a minor child] can pursue a parental consortium claim."  Restatement (Third) of Torts:  Concluding Provisions § 48C cmt. g.  We find it persuasive, however, that multiple states recognize an adult child's claim for loss of

21

parental consortium where a parent is tortiously injured by a third party. See N. Pac. Ins. Co. v. Stucky, 338 P.3d 56, 57-58 (2014) ("Montana law recognizes a claim for loss of consortium by the adult child of an injured parent" where the plaintiff shows that "a third party tortiously caused the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law" and "the impairment is so overwhelming and severe that it has caused the parent-child relationship to be destroyed or nearly destroyed"); Rolf v. Tri-State Motor Trans. Co., 745 N.E.2d 424, 428 (Ohio 2001) (holding that "adult emancipated children may recover for loss of parental consortium" where father "suffered a traumatic brain injury, is physically and mentally impaired, and will require custodial care for the remainder of his life"); Sebastien v. McKay, 649 So.2d 711 (La. Ct. App. 1994) (allowing loss of parental consortium claims made by adult children when their father required constant care due to his temporarily but significantly weakened condition due to father's doctor's negligence in failing to remove a broken tube in father's back post-surgery); Reagan v. Vaughan, 804 S.W.2d 463, 466, 467 (Tex. 1990) ("We hold that children may recover for loss of consortium when a third party causes serious, permanent, and disabling injuries to their parent," and "decline to limit the right of recovery under this cause of action to minor children");

22

Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R. Co., 335 N.W.2d 148 (Iowa 1983) (holding that adult and married children may raise loss of parental consortium claims when a parent is injured); see also Nelson v. Four Seasons Nursing Ctr., 934 P.2d 1104, 1105 (Okla. Civ. App. 1996) (holding, in a case in which plaintiff's father disappeared while under defendant nursing home's care, "In cases where the parent-child relationship is destroyed or nearly destroyed by the tort of the defendant, the affected children, both minors and adults alike, should be allowed to maintain a cause of action for loss of parental consortium."). We now join those jurisdictions in recognizing a child's claim for loss of parental consortium where a third party has severely injured a parent, whether the child is a minor or an adult.

## V. Conclusion

Hence, we recognize Hoku's claim for loss of parental consortium. Therefore, the circuit court's order denying GEO Care's motion for summary judgment is affirmed. This case is

remanded to the circuit court for further proceedings consistent with this opinion.

Frederick Matson Kelley                 /s/ Mark E. Recktenwald
(Alex Wilkins and
Jon S. Jacobs with him                  /s/ Sabrina S. McKenna
on the briefs)
for plaintiffs-appellees                /s/ Todd W. Eddins

Jeffrey S. Portnoy                      /s/ Lisa M. Ginoza
(Trisha L. Nishimoto
and Troy C. Young                       /s/ Vladimir P. Devens
with him on the briefs)
for defendants-appellants

